IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| RANIA M. KASMIA ET AL., | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | *      Civil No. 25-3651-BAH |
| JOSEPH B. EDLOW ET AL., | * |
| Defendants. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM AND ORDER**

Plaintiffs, a noncitizen family[1] residing in Frederick County, Maryland, bring this suit pursuant to the Administrative Procedure Act ("APA") against Joseph B. Edlow, in his official capacity as Director of United States Citizenship and Immigration Services ("USCIS"), and USCIS (collectively "Defendants"), alleging agency action unlawfully withheld and unreasonably delayed. ECF 1. The suit revolves around Plaintiffs' I-485 adjustment of status applications, which Plaintiffs allege USCIS received on October 3, 2024. ECF 1, at 4 ¶ 16. Apart from USCIS's request for evidence issued in January of 2025, to which Plaintiffs allege they responded in March of that same year, Plaintiffs aver that they have not received any decision or update from USCIS on their applications well over a year after those applications were filed. *Id.* ¶ 18. Pending before the Court is Defendants' motion to stay the case until the resolution of an appeal of three separate matters currently pending before the Fourth Circuit. ECF 16. At the Court's direction, ECFs 17 and 19, Plaintiffs filed a response in opposition to the stay, ECF 18, to which Defendants replied,

---

[1] Plaintiffs are Rania M. Kasmia, her husband, Nahidh Shaath, and their minor children, N.N.S. and F.N.S. ECF 1.

ECF 20.[2]  The Court has reviewed all relevant filings and finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).  For the reasons explained below, Defendants' motion to stay is DENIED.  Defendants will have fourteen (14) days from the date of this memorandum and order to respond to Plaintiffs' complaint.

## I.    BACKGROUND

This suit was filed on November 6, 2025.  ECF 1.  After two extensions of time granted over Plaintiffs' opposition, Defendants' deadline to respond to the complaint was set for May 28, 2026.  ECF 12.  On that day, however, Defendants filed a motion to stay this case in light of a consolidated appeal currently pending in the Fourth Circuit, *Soumah v. Collett*, Case No. 25-1511, and *Zalmai v. Josephs-Conway*, Case No. 25-1587.[3]  *See* ECF 16.  The parties in that matter are currently in the process of scheduling oral argument, which is likely to occur in the fall of 2026.  *See Zalmai v. Josephs-Conway*, 4th Cir. Case No. 25-1587, at ECFs 30, 34.  Defendants assert that the consolidated appeal will address "whether eligibility for relief under 8 U.S.C. § 1159(b)(3), INA § 209(b)(3), is determined at [the] time of filing the I-485 or at the time [of] adjudication of the I-485."  ECF 16, at 1 ¶ 2.  According to Defendants, that means "[t]he outcome of the Fourth Circuit's ruling in *Zalmai* will potentially impact Plaintiffs' pending applications for relief in this matter."  *Id.* at 2 ¶ 3.

Specifically, Defendants contend that "Plaintiffs were granted asylum on March 26, 2024, and filed their filed I-485s on October 3, 2024," and therefore at the "time of filing their I-485s, Plaintiffs had 6.5 months of physical presence in the United States as asylees, rather than the

---

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[3] Although it appears that *Soumah* may be the lead case, *see* ECF 20, at 1 n.1, the Court refers to the consolidated appeal as "*Zalmai*" in this memorandum and order, as the parties have done in most of the briefing on the motion to stay.

requisite year." *Id.* Defendants admit that "[i]n the past, USCIS resolved this issue by applying the one year of physical presence at the time of adjudication of the I-485," rather than application. ECF 16, at 2 ¶ 3 n.2. However, "[i]f the Fourth Circuit upholds the district court rulings that eligibility for relief under 8 U.S.C. § 1159(b)(3) is determined at [the] time of filing the application, not at the time of adjudication," Defendants will likely take the position that "Plaintiffs would not have been eligible for relief at the time they filed their applications for adjustment of status and their mandamus action will be rendered moot." *Id.*

Plaintiffs oppose Defendants' motion to stay. ECF 18. Plaintiffs argue that the imposition of an opposed stay like this one is only appropriate where the separate lawsuit would define the rights of the parties in the instant case, and Plaintiffs advance several arguments regarding why they believe *Zalmai* is not such a case. *See id.* at 4–6. Additionally, Plaintiffs argue that their action seeks adjudication itself, rather than challenging a particular outcome, so resolution of the pending appeal in *Zalmai* is beside the point. *See* ECF 18, at 6 ("Whether Plaintiffs will ultimately be granted relief goes to the outcome of adjudication, not to the agency's duty to adjudicate."). Finally, Plaintiffs contend that the stay would prejudice them, as continued delay of adjudication causes them to be unable to visit a family member in critical medical condition abroad and to undertake work that requires international travel, and to "suffer severe emotional distress and the loss of both professional and personal stability." *Id.* at 7. The Court discusses Plaintiffs' arguments at further length below.

## II.   LEGAL STANDARD

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013). "How this can best be done calls for the exercise

of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299

U.S. at 254–55 (first citing *Kansas City Southern R. Co. v. United States*, 282 U.S. 760, 763 (1931);

and then citing *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935)).

To guide the exercise of this discretion, "[c]ourts considering a motion to stay weigh three

factors: '(1) the impact on the orderly course of justice, sometimes referred to as judicial economy,

measured in terms of the simplifying or complicating of issues, proof, and questions of law which

could be expected from a stay; (2) the hardship to the moving party if the case is not stayed; and

(3) the potential damage or prejudice to the non-moving party if a stay is granted.'" *Abbella Grp.*

*Healthtech, LLC v. Qualivis, LLC*, Civ. No. JMC-24-00331, 2025 WL 2430018, at *11 (D. Md.

Aug. 22, 2025) (quoting *Trice v. Oliveri & Assocs., LLC*, Civ. No. GLR-19-3272, 2020 WL

13042297, at *2 (D. Md. Dec. 18, 2020)).  "Courts additionally consider the length of the requested

stay, as well as 'whether proceedings in another matter involve similar issues.'" *Id.* (quoting *Bethel*

*Ministries, Inc. v. Salmon*, Civ. No. SAG-19-01853, 2020 WL 1873623, at *2 (D. Md. Apr. 15,

2020)).   "The  party  seeking  a  stay  must  justify  it  by  clear  and  convincing  circumstances

outweighing potential harm to the party against whom it is operative."  *Williford v. Armstrong*

*World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

III.    **ANALYSIS**

As an initial matter, the Court agrees with Plaintiffs that *Zalmai* will resolve a technically

distinct question from the one underlying this case.  *See* ECF 16, at 4.  As Plaintiffs suggest, *Zalmai*

is about "whether a derivative asylee who was the spouse of a refugee at the time of filing must

remain  so  through  adjudication."   *Id.*; *see also Zalmai v. Josephs-Conway*, No. 1:24-CV-497

(PTG/WBP), 2025 WL 938619, at *2 (E.D. Va. Mar. 27, 2025) ("The central question in dispute

is whether under 8 U.S.C. § 1159(b)(3), an applicant for lawful permanent residence who derives

their asylee status from being a spouse of a refugee must 'continue[ ]' to be a spouse of a refugee:

(1) until their application for adjustment has been adjudicated; or (2) only at the time they file their application for adjustment.").  However, the Fourth Circuit's answer to that question may still significantly bear on the question Defendants struggle with here in deciding how to adjudicate Plaintiffs' pending applications.  The requirement that an individual is a spouse of a refugee comes from the same statute that requires physical presence for at least one year after being granted asylum.  *See* 8 U.S.C. § 1159(b).  That is especially so in light of the Government's argument on appeal in *Zalmai* "asking the Fourth Circuit to re-evaluate 8 U.S.C. § 1159(b) as a whole which will necessarily include consideration of the interplay between 1159(b)(2) and (b)(3)."  ECF 20, at 3.

Nevertheless, the extent to which the Fourth Circuit's decision will bear on the issue described by Defendants remains to be seen.  "Only in rare circumstances will a litigant in one cause be *compelled* to stand aside while a litigant in another settles the rule of law that will define the rights of both."  *Landis*, 299 U.S. at 255 (emphasis added).  And here, as Plaintiffs rightly point out, *Zalmai* will not necessarily define the rights of the litigants in this action, largely because Plaintiffs do not seek a particular "outcome of adjudication," but rather merely an adjudication in the first instance.  ECF 18, at 6.  Defendants counter that "compelling USCIS to adjudicate Plaintiffs' I-485 petitions prior to a ruling in *Zalmai* will result in unnecessary hardship to USCIS."  ECF 20, at 3.  But Defendants' explanation rests on the fact that "an erroneous grant of approval would be difficult to remedy as it would require USCIS to issue an NTA (Notice to Appear, Form I-831) or rescission which is a time-consuming process."  *Id.*  Although the Court appreciates the workload facing USCIS, it also notes that a Notice to Appear is sent "in every removal case." *Dragomirescu v. U.S. Att'y Gen.*, 44 F.4th 1351, 1354 (11th Cir. 2022).  The Court has trouble concluding that Defendants would incur substantial hardship in preparing a notice issued in the

"ordinary course" of all removal proceedings.  *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) ("In the ordinary course, if the Department of Homeland Security (DHS) discovers that an alien is living in the United States without authorization, it may initiate removal proceedings against the alien by sending him a 'notice to appear.'").

More compelling to the Court is "the potential damage or prejudice to" Plaintiffs "if a stay is granted.'"  *Abbella Grp. Healthtech, LLC*, 2025 WL 2430018, at *11 (citation omitted).  More than two years have passed since Plaintiffs were granted asylum and more than a year and a half has passed since they filed their applications.  *See* ECF 18, at 2.  "Plaintiff Nahidh Shaath's father is in critical medical condition abroad, with a high likelihood of imminent death, and the family has been unable to travel to be at his side due to the pending adjustment application."  *Id.* at 7.  Plaintiff also describes the significant and ongoing difficulties Shaath faces at work as a result of the unresolved applications, in addition to the emotional and financial stress other Plaintiffs face while they navigate a lack of professional and personal stability.  *See id.*  Although the hardships Plaintiffs describe are inherent in the immigration process, a stay tied to the resolution of *Zalmai*, several months away from oral argument, would exacerbate these hardships.

Finally, the Court does not find that a stay will positively impact "the orderly course of justice, sometimes referred to as judicial economy."  *Abbella Grp. Healthtech, LLC*, 2025 WL 2430018, at *11 (citation omitted).  While Defendants assert that "a stay would . . . 'conserve valuable judicial resources,'" because *Zalmai* could effectively "moot this mandamus action," ECF 16, at 2, the Court also notes Plaintiffs' argument that "Defendants can end this case at any time by adjudicating," ECF 18, at 6.  At best, this factor is neutral.  And while "[j]udicial economy is, of course, a consideration," the Court finds that any interest in judicial economy is outweighed by the ongoing harm to Plaintiffs.  *Kadel v. Folwell*, 446 F. Supp. 3d 1, 19 (M.D.N.C. 2020)

("However, this case is in its infancy, and it may be months before a decision is issued in *Harris*— a substantial delay . . . [g]iven the ongoing harm to Plaintiffs[.]"), *aff'd sub nom. Kadel v. N. Carolina State Health Plan for Tchrs. & State Emps.*, 12 F.4th 422 (4th Cir. 2021). The better course, it seems, is to facilitate resolution of this district court matter so that any review sought by Plaintiffs related to the adjudication of their adjustment applications may proceed expeditiously. Should *Zalmai* remain pending at the time, a stay may be appropriate in that matter if a review is ever brought. But in *this* case, the Court concludes that Defendants have not justified a stay "by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford*, 715 F.2d at 127.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, it is hereby **ORDERED** that Defendants' motion to stay, ECF 16, is **DENIED**. Defendants shall file a response to the complaint within fourteen (14) days of the date of this order.

Dated: <u>June 25, 2026</u>                                   <u>          /s/          </u>
                                                             Brendan A. Hurson
                                                             United States District Judge